MOTZ

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

10 CV 6258

2010 AUG 20 AM 10:33
S.D. OF N.Y.
FILED U.S. DISTRICT COURT

| | |
|---|---|
| AUDREY C. MILTON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALLSTAR PRODUCTS GROUP, LLC d/b/a STRAP PERFECT™,<br><br>Defendant. | Case No.<br><br>Class Action |

CLASS ACTION COMPLAINT

Plaintiff, AUDREY C. MILTON, individually, and on behalf of all others similarly situated, sues Defendant, ALLSTAR PRODUCTS GROUP, LLC d/b/a Strap Perfect™ ("ALLSTAR"), a New York Limited Liability Company, and alleges:

I.  PARTIES

1. At all times material hereto, PLAINTIFF MILTON was a Florida citizen and resident of Walton County, Florida. MILTON is the aggrieved person who brings this class action on behalf of herself and all others similarly situated against ALLSTAR, under Federal Rule of Civil Procedure 23 (b)(2) and (b)(3).

2. At all times material, DEFENDANT ALLSTAR PRODUCTS GROUP, LLC, is a domestic limited liability company with its corporate offices located at 4 Skyline Drive, Hawthorne, Westchester County, New York, 10532.

1

## II.   BASIS FOR JURISDICTION

3. This is a consumer class action for injunctive relief, declaratory judgment, and for aggregate damages.

4. The named Plaintiff and the Defendant are citizens of different states. This court has diversity jurisdiction over this matter under 28 U.S.C. §1332(d) ("Class Action Fairness Act, "CAFA").

5. CAFA provides that the Court has original jurisdiction in any class action where the amount in controversy exceeds $5 million and any member of the Class is a citizen of a state different from any defendant.

6. Because ALLSTAR sells its product through its internet website to consumers throughout the United States, thousands of class members will be from states other than New York.

7. On information and belief, the amount in controversy exceeds $5 million. Plaintiff believes that there are at least 1 million Class members, who paid the $7.95 fee at issue. Therefore, the class would exceed the $5 million amount in controversy requirement.

8. Alternatively, many of the state consumer protection statutes that are at issue in this six state class action allow statutory damages for violations. These statutory damages will increase the value of the case far beyond the $5 million threshold.

9. Venue lies in this Court as ALLSTAR conducts its business from its corporate headquarters in Westchester County, New York, which is encompassed within the Southern District.

### III. GENERAL FACTS

10. ALLSTAR "is a leader in development, branding, marketing and distribution" of consumer products according to its website http://www.allstarmg.com.

11. ALLSTAR sells a product called Strap Perfect™ which is a lightweight, plastic bra fastener designed to conceal bra straps when worn with certain types of women's clothing. Each Strap Perfect™ clip weighs about as much as a paperclip.

12. ALLSTAR advertises Strap Perfect™ heavily on both television and the internet. Strap Perfect™ has been a featured product on daytime talk shows, including Good Morning America.

13. ALLSTAR sells Strap Perfect™ through its Internet Website: https://www.strapperfect.com.

14. This is a consumer class action concerning Defendant, ALLSTAR's, unfair and deceptive practice of charging consumers for phantom shipping charges in connection with its "FREE" marketing promotion.

15. Simply stated, Defendant advertises its Strap Perfect™ product for $19.99, but the consumer pays a total of $35.89 as a result of ALLSTAR's unfair and deceptive "FREE" marketing scam.

16. ALLSTAR's unfair and deceptive marketing scam stems from its combined use of "BUY 1 GET 1 FREE" marketing with duplicative and excessive shipping charges that increase the total consumer price by eighty percent.

17. First, the only way to purchase an ALLSTAR Strap Perfect™ kit is through its "BUY 1 GET 1 FREE" internet promotion. In other words, ALLSTAR requires each consumer to order two Strap Perfect™ kits under its "BUY 1 GET 1 FREE" program. The Internet based order system is set up so that consumers cannot order a single set of Strap Perfect™ clips and must instead always order at least two sets.

18. By requiring each consumer to purchase two sets, ALLSTAR is then able to charge consumers $7.95 Postage and Handling for each set ordered, for a total Postage and Handling charge of $15.90 for a product that weighs less than half a pound.

19. The final act of ALLSTAR's unfair and deceptive scheme is that after charging individual postage and handling charges for each of the two required Strap Perfect™ sets, ALLSTAR cuts its costs and increases its profits by placing both sets into a single envelope and mailing the single envelope via the cheapest form of U.S. Mail anywhere in the continental United States for less than $4.

20. Because ALLSTAR only mails a single package (which is paid for by the first $7.95 Postage and handling charge), its second $7.95 Postage and Handling charge for the required "FREE" set is unlawful under the consumer protection statutes cited herein.

21. The additional $7.95 fee connected to the "FREE" set is nothing more than a phantom add-on fee that actually constitutes a substantial charge for a "FREE" product in violation of the consumer protection statutes cited herein.

22. ALLSTAR conducts its Internet sales of Strap Perfect™ throughout the United States through its internet website, (https://www.strapperfect.com), and was engaged in trade or commerce as defined in the consumer protection statutes listed in this Complaint.

23. Because ALLSTAR only sent a single package, the second $7.95 shipping and handling charge was a phantom charge and constituted nothing more than profit to ALLSTAR on a kit that was supposed to be "FREE."

24. On information and belief, the actual cost of postage for shipping the two Strap Perfect™ kits to Plaintiff via United States Mail was less than $4.

25. By charging consumers for shipping two packages but only sending one, and by requiring consumers to purchase a second "FREE" kit, Defendant has committed materially misleading and consumer-oriented acts that have caused Plaintiff to suffer actual injury in the amount of $7.95.

26. Upon information and belief, Defendant regularly utilizes these same deceptive practices as described above on many of the other products that it sells.

27. Defendant's actions have a broad impact on consumers at large, including consumers in the states of California, Florida, Illinois, Michigan, New Jersey, and New York.

28. As a direct and proximate result of Defendant's deceptive acts and practices, committed in willful and knowing violation of the consumer protection laws asserted herein, Plaintiff was damaged in that she, among other things, paid an additional $7.95 for shipping a package that was never sent.

29. Defendant is liable to Plaintiff for violations of the consumer protection laws of California, Florida, Illinois, Michigan, New Jersey, and New York.

## IV. NAMED PLAINTIFF'S FACTS

30. On or about, August 13, 2009, Plaintiff MILTON purchased one "BUY 1 GET 1 FREE" Strap Perfect™ kit for $19.95 from ALLSTAR.

31. Plaintiff was charged by ALLSTAR a P&H fee of $7.95 for the set she ordered and an additional P&H fee of $7.95 for the "FREE" kit that it required she purchase.

32. Plaintiff completed the information form required to conclude the purchase and paid ALLSTAR a total of $35.89 for the transaction.

33. On or about August 21, 2009, Plaintiff received both Strap Perfect™ kits approximately one week after the date she placed her order. When the shipment arrived, Plaintiff discovered that both Strap Perfect™ kits were mailed in a single package.

34. The invoice provided by ALLSTAR stated that Plaintiff had been charged $7.95 for each of the two Strap Perfect™ sets, for a total of $15.90 for "Shipping & Handling."

## V. CLASS REPRESENTATION ALLEGATIONS, DEFINITIONS, AND CLASS ISSUES

35.     This lawsuit is brought on behalf of Plaintiff, individually, and on behalf of all consumers in California, Florida, Illinois, Michigan, New Jersey, and New York that purchased a "BUY-1-GET-1-FREE" Strap Perfect™ kit from Defendant's website (www.strapperfect.com) and were charged two $7.95 fees for shipping and handling.

36.     The class period runs from the date that Defendant began offering the "BUY-1-GET-1-FREE" promotion through the date of notice to the class. Since the practice is believed to have been in existence for less time than the applicable limitations period for any state in the class, the limitations period will be the same for all class members.

37.     Plaintiff and all members of the Class are consumers and members of a Class of individuals that the following consumer protection statutes were designed to protect:

    a.    California Business & Professional Code § 17200 *et seq.*;
    b.    Florida Deceptive and Unfair Trade Practices Act § 501.201, *et seq.*;
    c.    Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.*;
    d.    Michigan Consumer Protection Act, Mich. Comp. Law § 445.901 *et seq.*;
    e.    New Jersey Consumer Protection Act, N.J. Stat. Ann. § 56:8-1 *et seq.*; and
    f.    New York Deceptive Practices Act, N.Y. Gen. Bus. Law § 349 *et seq.*

38.     The members of the Class are so numerous that joinder of all members is not practical. While the exact number of Class members is unknown to Plaintiff

at this time, Plaintiff believes that it is in excess of 1,000,000 consumers. Detailed information on the size of the Class shall be ascertained through appropriate discovery and from records maintained by ALLSTAR and its agents.

39. ALLSTAR's website makes a standard representation that the second $7.95 charge is for shipping a second "FREE" kit. Because consumers cannot waive the "FREE" set to avoid the additional $7.95 charge, all consumers that fall within the class definition will have identical claims.

40. ALLSTAR only ships a single package to each consumer and the shipping and handling of that single package costs significantly less than the first $7.95 charge. Accordingly, the second $7.95 P&H fee is a phantom charge that constitutes nothing but additional profit to ALLSTAR. Moreover, the second $7.95 charge makes the second set not "FREE" at all. This uniform conduct makes class action treatment of the case justified.

41. Plaintiff's class action claims are typical of the Class she seeks to represent, as Plaintiff and all other members of the Class sustained actual damages as a result of ALLSTAR's wrongful conduct in connection with the additional, unjustified fees.

42. Plaintiff will fairly and adequately protect and represent the interest of each member of the Class and she has no interests antagonistic to the other members of the Class.

43. Plaintiff has retained the undersigned law firms as counsel in this matter. These firms are experienced in handling class actions involving, among

other matters, consumer protection issues, and unfair and deceptive trade practices over the past 10 years. As a result, Plaintiff's attorneys are qualified and experienced in class action litigation and will adequately protect the interests of the class.

44. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable; liability can be proven class-wide by proving liability against ALLSTAR for the named Plaintiff; and the large number of potential individual actions would create burdens, expense, and inefficiencies for this Court. Plaintiff foresees no significant difficulties in managing this action as a class action.

45. Absent a class action, the relatively small amount of individual damages at stake for individual actions would be outweighed by the cost of the litigation. Joining these relatively small individual claims is practically speaking the only method by which the putative class members will remedy the wrongs addressed herein.

46. A class action is superior to any other method for adjudicating the common claims asserted herein due primarily to the relatively small amount of individual damages. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.

47. Among the questions of law and fact common to the Class are:

a. Whether ALLSTAR's advertised offer that buyers can get a second Strap Perfect™ kit "FREE," but requiring each buyer to pay an

unjustified additional phantom fee of $7.95 for P&H is a deceptive trade practice;

b. Whether ALLSTAR breached the contract it entered with Plaintiff and each class member that agreed to pay an additional $7.95 for P&H on the second Strap Perfect™ kit, when no additional P&H was necessary because only a single package was mailed;

c. Whether ALLSTAR's practices described above should be declared unlawful by the Court, and whether ALLSTAR should be enjoined from continuing the practices.

48. Under Fed. R. Civ. Pro. 23(B)(2), Plaintiff, on behalf of all similarly situated persons, maintains this class action as a result of ALLSTAR's actions or omissions as set forth herein. Those actions or omissions are generally applicable to all the members of the class thereby making final injunctive relief or declaratory relief concerning the class as a whole appropriate.

## COUNT I
## VIOLATION OF CONSUMER PROTECTION STATUTES OF CALIFORNIA, FLORIDA, ILLINOIS, MICHIGAN, NEW JERSEY, AND NEW YORK

49. Plaintiff re-alleges and incorporates paragraphs 1 through 48 as if expressly set forth herein.

50. This is an action against ALLSTAR for violation of the consumer protection laws of California, Florida, Illinois, Michigan, New Jersey and New York.

51. Each of the following consumer protection statutes prohibit businesses from engaging in deceptive acts and practices of the kind described herein:

a. California Business & Professional Code § 17200 *et seq.*;

b. Florida Deceptive and Unfair Trade Practices Act § 501.201, *et seq.*;

c. Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.*;

d.   Michigan Consumer Protection Act, Mich. Comp. Law § 445.901 *et seq.*;

e.   New Jersey Consumer Protection Act, N.J. Stat. Ann. § 56:8-1 *et seq.*; and

f.   New York Deceptive Practices Act, N.Y. Gen. Bus. Law § 349 *et seq.*

52.   ALLSTAR violated each of the consumer protection statutes listed above, by using deceptive trade practices in the sale of its Strap Perfect™ product. Specifically, ALLSTAR unlawfully charged Plaintiff, and all class members, $7.95 for shipping a second package that was never sent. ALLSTAR clearly stated that the second $7.95 fee was for postage and handling on a second "FREE" set of Strap Perfect™ clips. Instead, ALLSTAR mails both kits to consumers in a single package at a cost covered entirely by the first $7.95 shipping charge.

53.   Plaintiff and the class members were damaged by having to pay $7.95 for shipping a phantom second package that was never sent. Plaintiff and the class members also did not get the benefit of their bargain as the "FREE" set promoted by ALLSTAR was not free.

54.   On behalf of herself, and on behalf of all class members and the public at large, Plaintiff seeks actual damages, and seeks injunctive relief preventing ALLSTAR from further unfair trade practices.

55.   WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, demands judgment against ALLSTAR for any and all actual and statutory damages, together with interest both prejudgment and post judgment, costs and attorney's fees and all such other and further relief as the Court may deem just and proper, and demands trial by jury on all issues triable at law by jury.

56. Further, Plaintiff, on behalf of herself and all others similarly situated, requests an order from this Court enjoining ALLSTAR from continuing its deceptive "BUY-1-GET-1-FREE" promotion and charging consumers for shipping a second package that is never sent.

## COUNT II
## BREACH OF CONTRACT

57. Plaintiff re-alleges and incorporates paragraphs 1 through 48 as if expressly set forth herein.

58. Plaintiff and all members of the class defined above contracted with ALLSTAR to purchase a Strap Perfect™ kit under ALLSTAR's "BUY-1-GET-1-FREE" offer. Under its free offer, ALLSTAR charged Plaintiff and the Class $7.95 for shipping a second Strap Perfect™ kit. ALLSTAR breached the contract with Plaintiff by not sending the second package. In other words, because ALLSTAR knew it was only shipping a single package and that the cost of shipping that package was already covered by the first $7.95 fee, the charge for the second package was not for shipping at all. The second $7.95 fee was mere profit for ALLSTAR and not for postage and handling as represented. As a result, the second set was not "FREE" in breach of the contract between the parties.

59. Plaintiff and the class members were damaged by ALLSTAR's breach of contract by paying $7.95 for shipping a second package that was never sent. Because ALLSTAR only sent Plaintiff and the class a single package, Plaintiff and each member of a class are due to receive a refund of the $7.95 for shipping a second package that was never sent.

60. WHEREFORE, Plaintiff, on behalf of herself, and of all class members, demands judgment against ALLSTAR for any and all actual and consequential damages, together with interest, both prejudgment and postjudgment, and such other and further relief as the Court may deem just and proper, and demands trial by jury on all issues triable at law by jury.

### Demand for Jury Trial

Please take notice that Plaintiff demands trial by jury in this action

Dated:   New York, New York
         August 19, 2010

Respectfully submitted,

Bromberg Law Office, P.C.

By: *[signature]*
Brian L. Bromberg
One of Plaintiff's Attorneys

Attorneys for Plaintiff

Brian L. Bromberg
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005
Tel: (212) 248-7906

*Brian W. Warwick
Varnell & Warwick, P.A.
20 La Grande Boulevard
The Villages, Florida 32159
Tel: 352-753-8600

*William C. Bielecky
William C. Bielecky, P.A.

400 Capital Circle S.E.
Suite # 18, Box 300
Tallahassee, Florida 32301
Tel: 850-521-0022

* Florida counsel will move for *pro hac vice* admission shortly after the case is assigned to a judge, the complaint is served, and the Defendant appears.