UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AUDREY C. MILTON, individually and on behalf of all others similarly situated, | No. 10 CV 6258 |
| Plaintiff, | |
| v. | Hon. Fredrick Motz |
| ALLSTAR PRODUCTS GROUP, LLC d/b/a STRAP PERFECT™, | |
| Defendant. | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS THE COMPLAINT**

DAVIS & GILBERT LLP
Neal H. Klausner (nklausner@dglaw.com)
Jennifer Tafet Klausner (jklausner@dglaw.com)
David S. Greenberg (dgreenberg@dglaw.com)
Shirin Keen (skeen@dglaw.com)
1740 Broadway
New York, New York 10019
(212) 468-4800
*Attorneys for Defendant
Allstar Products Group, LLC*

TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF RELEVANT FACTS ....................................................................................2

ARGUMENT ............................................................................................................................8

I.       APPLICABLE LEGAL STANDARDS .............................................................8

II.     THE COURT LACKS SUBJECT MATTER JURISDICTION OVER MILTON'S CLAIMS ...........................................................................................................9

III.    MILTON FAILS TO STATE A CLAIM FOR CONSUMER FRAUD ...........................11

        A.     MILTON ALLEGES NO BASIS TO PURSUE A CLAIM ON HER OWN BEHALF UNDER THE LAWS OF CALIFORNIA, ILLINOIS, MICHIGAN OR NEW JERSEY ........................11

        B.     MILTON HAS NO VIABLE CLAIM UNDER NEW YORK'S CONSUMER PROTECTION ACT ..............................................................................................................12

        C.     ALLSTAR'S MARKETING MATERIALS DO NOT VIOLATE THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ..................................................................15

IV.    MILTON FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT ...................17

CONCLUSION ......................................................................................................................18

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Berry v. Budget Rent A Car Systems, Inc.*,
    497 F. Supp. 2d 1361 (S.D. Fla. 2007) ...................................................................15

*Cecere v. R.J. Reynolds Tobacco Co.*,
    No. 98 Civ. 2011 (RPP), 1998 WL 665334 (S.D.N.Y. Sept. 28, 1998) ...................9

*Dillard v. Runyon*,
    928 F. Supp. 1316 (S.D.N.Y. 1996).........................................................................8

*In re OnStar Contr. Litig.*,
    600 F. Supp. 2d 861 (E.D. Mich. 2009)..................................................................11

*Lozano v AT & T Wireless Services, Inc.*,
    504 F.3d 718 (9th Cir 2007) ...................................................................................10

*Luckett v. Bure*,
    290 F.3d 493 (2d Cir. 2002).....................................................................................8

*Matusovsky v Merrill Lynch*,
    186 F. Supp. 2d 397 (S.D.N.Y. 2002).....................................................................2

*Scalisi v. Fund Asset Mgt., L.P.*,
    380 F.3d 133 (2d Cir. 2004).....................................................................................8

*Southwest Sunsites, Inc. v. Federal Trade Commisssion*,
    785 F.2d 1431 (9th Cir. 1986) .................................................................................15

*York v. Assn. of Bar of City of New York*,
    286 F.3d 122 (2d Cir. 2002).................................................................................2, 8

## STATE CASES

*Avery v. State Farm Mut. Auto. Ins. Co.*,
    216 Ill. 2d 100, 835 N.E.2d 801 (2005)..................................................................11

*Goshen v. Mut. Life Ins. Co. of New York*,
    98 N.Y.2d 314 (2002) .........................................................................................12, 13

*Laufer v U.S. Life Ins. Co. in City of New York*,
    BER-L-9082-04, 2005 WL 1869211 (N.J. Super. Ct. Law Div. Aug. 8, 2005),
    *affd*, 385 N.J. Super. 172, 896 A.2d 1101 (N.J. Super. Ct. App. Div. 2006)..........11

*Lewis v. Hertz*,
    181 A.D.2d 493 (1st Dep't 1992)............................................................................14

*Millenium Commn's & Fulfillment, Inc. v. Office of the Attorney General*,
   761 So. 2d 1256 (Fla. Dist. Ct. App. 2000) ............................................................15

*Norwest Mtge., Inc. v Superior Ct.*,
   72 Cal. App. 4th 214 (Ct. App. 1999) ...................................................................11

*Sands v Ticketmaster-New York, Inc.*,
   207 A.D.2d 687 (1st Dep't 1994) ........................................................................14

*Taylor v. BMG Direct Marketing, Inc.*,
   299 A.D.2d 181 (1st Dep't 2002) ....................................................................14, 16

*Zuckerman v. BMG Direct Marketing, Inc.*,
   290 A.D.2d 330 (1st Dep't 2002) .............................................................13, 14, 16

### FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

28 U.S.C. § 1332 ....................................................................................................9

Fed. R. Civ. P. 12(b)(1) ......................................................................................8, 11

Fed. R. Civ. P. 12(b)(6) ..................................................................................1, 8, 17

### STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

Cal. Bus. & Prof. Code § 17200 ............................................................................10

Fla. Stat. Ann. § 501.201 ......................................................................................12

Fla. Stat. Ann. § 501.211 ......................................................................................10

Fla. Stat. Ann. § 501.204 ......................................................................................15

Ill. Comp. Stat. § 505/10a(a) ................................................................................10

Mich Comp. Law. § 445.911(2)-(3) .......................................................................10

N.J. Stat. Ann. § 56:8-19 ......................................................................................10

N.Y. Gen. Bus. Law § 349 ............................................................................. *passim*

Defendant Allstar Marketing Group, LLC d/b/a Allstar Products Group (named in the Complaint as Allstar Products Group, LLC) ("Allstar"), by and through its attorneys, Davis & Gilbert LLP, respectfully submits this Memorandum of Law in support of its Motion to Dismiss plaintiff Audrey C. Milton's ("Milton" or "Plaintiff") complaint (the "Complaint") pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff Audrey Milton accuses defendant Allstar of deceptive acts and practices, and consumer fraud, based on its marketing of the Strap Perfect$^{TM}$ product ("Strap Perfect"). Strap Perfect is a three-inch plastic disc that attaches to a woman's bra straps and clips them together so as to conceal them when sleeveless garments are worn. Strangely, Milton brings this putative consumer fraud class action while at the same time admitting that she was not actually deceived about the product she ordered – she got exactly what she paid for, exactly what she was told she would be getting. More strangely, Milton, a Florida resident, comes to federal court in New York, purporting to sue Allstar under the laws of California, Illinois and Michigan, among others. In any case, regardless of where Milton brings her claims, she cannot succeed, because she was not deceived about the price she would pay for the two Strap Perfect kits she ordered.

Milton alleges that Allstar offers the Strap Perfect clips on its website for $19.99, that the customer must pay a disclosed $7.95 processing and handling fee, that Allstar currently includes a second set of clips for free with every order, and that the customer must pay a disclosed $7.95 processing and handling fee on that second set as well.  These terms are clearly presented over and over throughout the purchase process.  Nonetheless, Milton complains that when she decided to purchase her clips, she was somehow deceived when Allstar charged her exactly the amounts listed in the offer. Milton admits that she got what she paid for, and that she knew in advance the

amount she would pay for it. The gravamen of her Complaint seems to be that Allstar is able to profit from its sales of the Strap Perfect clips.  (*See* Complaint, ¶ 40.)

As discussed below, the Court should dismiss this action in its entirety for several reasons.  First, Milton cannot meet the $5 million statutory threshold required to confer subject matter jurisdiction on this Court under the Class Action Fairness Act.  Second, even if the Court has jurisdiction over the case, under Florida law – the only law applicable to this case at this time – Allstar's marketing materials were not deceptive, as they clearly disclosed all fees that customers would pay in purchasing Strap Perfect.   Finally, Milton's Complaint fails to adequately allege any breach of contract, because Allstar sold exactly what it promised to sell, at exactly the price it offered.  For all of the reasons discussed herein, the Court should grant Allstar's motion, and dismiss Milton's Complaint in its entirety.

## STATEMENT OF RELEVANT FACTS[1]

Defendant Allstar is a limited liability company headquartered in Westchester County, New York.  (Compl. ¶ 2.)  Allstar sells a device called "Strap Perfect," which is a lightweight, plastic clip designed to conceal bra straps when worn with certain types of women's clothing.  (¶ 11.)    Allstar   sells   its   Strap   Perfect   clips   through   an   internet   website, http://www.strapperfect.com (the "Website"), where it offers Strap Perfect pursuant to a "Buy One, Get One Free" offer (the "Offer").  (¶¶ 13, 17.)  Allstar currently sells the Strap Perfect online pursuant to this Offer only; consumers cannot purchase a single set of Strap Perfect clips.  (¶ 17.)  The advertised price for one set of Strap Perfect clips is $19.99.  (¶ 15.)  In addition,

---

[1]      Unless otherwise noted herein, all facts are taken from Milton's Complaint, and are assumed to be true <u>for the purposes of this motion only</u>, as required on a motion to dismiss, except where the Complaint's allegations are at odds with the documents incorporated by reference therein.  *See York v. Assn. of Bar of City of New York*, 286 F.3d 122, 125 (2d Cir. 2002); *Matusovsky v Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002).

Allstar charges a $7.95 processing and handling fee ("P&H")[2] for each set of Strap Perfect clips ordered, a charge that Allstar prominently displays throughout its Website, wherever the price of the item or the "Buy One Get One Free" terms of the Offer are displayed.  (Compl. ¶ 18; *see* November 2, 2010 Declaration of Ron Steblea ("Steblea Decl."), Ex. 1.)  For example, on the very first screen of the Website, where the terms of the Offer are first shown:



(Steblea Decl., Ex. 1, at 1.)  Likewise, elsewhere on that same page:

· **Get A Beautiful Instant Boost To Your Silhouette**
· **Custom Fit That Flatters You in Any Outfit**
· **Wear Under Dresses, Sweaters, Blouses or T-Shirts**
· **Give Your Cleavage A Firm, Youthful Lift**

Now you can stop wrestling with stubborn bra straps *And* give your cleavage a firm, youthful lift thanks to Strap Perfect™: the ultimate bra strap solution/concealer! **You'll never risk another fashion faux pas with any bra again with Strap Perfect™!**

The Strap Perfect™ kit includes 3 clear clips, 3 nude clips, 3 black clips plus 48 pieces of Invisible Style® Tape for $19.99 plus $7.95 P&H and get a second set FREE, just pay an additional $7.95 P&H. You'll get a total of 18 Strap Perfect™ clips plus 96 strips of Invisible Style® Tape.

---

[2]      Milton erroneously characterizes this charge as a "Postage and Handling" charge in her Complaint.  (*See* Compl. ¶ 18.) The Website, however, makes no representation that the charge represents the cost of postage or shipping.  (*See* Steblea Decl., Ex. 1, *passim*.)  Rather, both the Website displays and the marketing video that automatically plays when a user visits the Website refer to this charge as "processing and handling."  (*See* Steblea Decl., Ex. 1 at 5; Ex. 2 (also available at www.strapperfect.com).

3

(*Id.* (emphasis added).)  Later, on the order confirmation page:



(*Id.* at 4 (emphasis added).)  Still later in the order process, Allstar offers additional Strap Perfect

kits at a further discount, again clearly disclosing the $7.95 P&H fee:



(*Id.* at 5 (emphasis added).)  Likewise, near the end of the ordering process, the customer is

offered the chance to purchase extra "Invisible Style Tape," used to secure loose-fitting clothing.

Once again, the Website clearly discloses that P&H will be charged:

(*Id.* at 11 (emphasis added).)

The Website is equally clear about those instances where an additional P&H fee will *not* be charged.  For example, later in the order confirmation process, Allstar offers the customer various "upsells," such as the opportunity to upgrade to a rubberized, non-slip version of the product, or to purchase a handbag with their Strap Perfect order, or to buy an electronic box opener, or to purchase Strap Perfect clips in fashion colors or "wedding white."  In each case, the Website makes clear that *no* additional P&H will be charged:

**ORGANIZE ALL OF YOUR PERSONAL BELONGINGS WITH A...**
**GREY BUXTON® BAG!**

Today it's only $14.95 and NO additional processing and handling. This stylish, genuine leather bag from Buxton® instantly organizes all of your personal belongings so you can find what you need quickly and easily. And as always, your satisfaction is guaranteed.

Buxton is a registered trademark of Buxton Corp.



**TIRED OF PACKAGES THAT ARE IMPOSSIBLE TO OPEN?**
**ACT NOW... AND GET THE PACKAGE SHARK!**

It's just $7.95 and free processing and handling! Plus as a bonus, order now and we'll add our electric scissors for FREE.

The Package Shark quickly opens CDs and DVDs with ease! This compact opener neatly and accurately opens any package, even clam shells, with one swipe.

**NOW YOU CAN HAVE A STRAP PERFECT™ FOR EVERY OUTFIT WITH OUR FASHION COLORS COLLECTION!**

This kit includes 8 clips total - one each in Red, Orange, Yellow, Green, Blue, Purple, Hot Pink and Light Blue for only $9.95, and we'll pay the additional processing and handling! And as always, your satisfaction is guaranteed.

**GET OUR STRAP PERFECT™ KIT IN WEDDING WHITE EXCLUSIVE OFFER!**

Get the Wedding White Strap Perfect™ kit for only $7.95 and NO additional processing and handling. This kit includes 6 total clips that come in classic Wedding White for any occasion!

(*Id.* at 6-10 (emphasis added).

Consistent with the explicit terms of the Offer, upon ordering a single set of Strap Perfect clips, the customer receives two sets of clips, and pays $19.99 (the advertised price of one set), plus $7.95 P&H for each set, for a total of $35.89.  (*See* ¶¶ 15, 17, 18; Steblea Decl., Ex. 1.)

Plaintiff Audrey Milton was a resident of Walton County, Florida.  (Compl. ¶ 1.)  On or about August 13, 2009, Milton purchased a set of Strap Perfect clips via the Website pursuant to the Offer, and, consistent with the terms of the Offer (as discussed above), paid a total of $35.89 to receive two sets of Strap Perfect clips.  (¶¶ 30-32.)  On or about August 21, 2009, Milton received the two Strap Perfect sets she had ordered.  (¶ 33.)

Milton purports to bring this putative class action on behalf of all consumers in California, Illinois, Michigan, New Jersey, New York and Florida that purchased a Strap Perfect kit pursuant to the Offer.  (¶ 35.)  Milton alleges that that she does not know the number of putative class members, but she believes it to be in excess of 1,000,000.  (¶¶ 7, 38.)  Based on this assumption, and because Milton seeks $7.95 in actual damages for each transaction (¶¶ 7, 53), she alleges that the putative class's damages will exceed $5,000,000.  Alternatively, she asserts that certain of the six state consumer protection laws provide for statutory damages that will result in a total exceeding $5,000,000 in damages.  (¶ 8.)  Allstar's actual total net sales pursuant to the Offer in the six states at issue in this action, however, amounted to only REDACTED (Steblea Decl., ¶ 5.)  Specifically, Allstar had the following sales in each of the six states pursuant to the Offer:

**CONFIDENTIAL INFORMATION REDACTED**
**UNREDACTED COPY FILED UNDER SEAL PURSUANT TO COURT ORDER DATED 10/29/2010**

| State | Sales | Refunds | Net Sales | Net Transactions |
|-------|-------|---------|-----------|------------------|
| California | REDACTED | REDACTED | REDACTED | REDACTED |
| Illinois | REDACTED | REDACTED | REDACTED | REDACTED |
| Michigan | REDACTED | REDACTED | REDACTED | REDACTED |
| New Jersey | REDACTED | REDACTED | REDACTED | REDACTED |
| New York | REDACTED | REDACTED | REDACTED | REDACTED |
| Florida | REDACTED | REDACTED | REDACTED | REDACTED |

(*See* Steblea Decl., ¶ 5.)

## ARGUMENT

### I.     APPLICABLE LEGAL STANDARDS

"On a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), the court may consider matters outside the pleadings, such as affidavits, documents, deposition testimony and the like." *Dillard v. Runyon*, 928 F. Supp. 1316, 1322 (S.D.N.Y. 1996), *aff'd*, 108 F.3d 1369 (2d Cir 1997). The burden of proof on such a motion rests with the party asserting jurisdiction (here, the plaintiff), who must demonstrate the Court's jurisdiction by a preponderance of the evidence. *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002).

"To survive a motion to dismiss [under Fed. R. Civ. P. 12(b)(6)], the complaint must allege facts which, assumed to be true, confer a judicially cognizable right of action." *York*, 286 F.3d at 125.   While the Court must generally assume the truth of the plaintiff's factual allegations, the Court is "not required to accept as true the legal conclusions or unwarranted deductions of fact drawn by the non-moving party." *Scalisi v. Fund Asset Mgt., L.P.*, 380 F.3d 133, 137 (2d Cir. 2004).  In considering the motion, the Court may consider not only the factual

8

allegations themselves, but also any documents annexed to the complaint or incorporated by reference.  *See Cecere v. R.J. Reynolds Tobacco Co.*, No. 98 Civ. 2011 (RPP), 1998 WL 665334, at *1 n.1 (S.D.N.Y. Sept. 28, 1998)(noting that consideration of defendant's print advertisement was appropriate where ad was the "very subject of plaintiffs' suit and is extensively referred to in the complaint," even though ad was not an exhibit thereto).

## II.   THE COURT LACKS SUBJECT MATTER JURISDICTION OVER MILTON'S CLAIMS

Milton asserts that the Court has jurisdiction over this case under the diversity jurisdiction statute, 28 U.S.C. § 1332.  (Compl. ¶ 4.)  Under the Class Action Fairness Act of 2005 ("CAFA"), even where there is minimal diversity present, the federal district courts lack jurisdiction over a diversity case unless "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d)(2).  For putative class actions, "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000."  *Id.* § 1332(d)(6).

Milton alleges, on information and belief, that "there are at least 1 million Class members[] who paid the $7.95 fee at issue."  (Compl. ¶ 7.)  In the alternative, Milton alleges that some of the state consumer protection laws cited in her Complaint provide for statutory damages that will "increase the value of the case far beyond the $5 million threshold."  (*Id.* ¶ 8.)  Under either theory, however, Milton is mistaken; the facts demonstrate that even Allstar's total sales do not approach the $5,000,000 threshold.

As set forth in the accompanying Declaration of Ron Steblea and the annexed exhibits, Allstar's total *nationwide* net sales of Strap Perfect pursuant to the Offer – that is, gross sales less returns – amounted to only REDACTED (Steblea Decl., ¶ 5.)  For the six states at issue in this case, total net sales pursuant to the Offer amounted to only REDACTED (*Id.*)  Moreover, the

9

majority of that amount consists of funds not even sought by the putative class: Milton's Complaint seeks damages of only $7.95 per sale, not the entire price paid in the transaction.  (*See* Compl. ¶¶ 7, 53.) Further still, this sales figure also includes various "upsells" – other items that can be purchased by consumers while they are purchasing Strap Perfect clips pursuant to the Offer – that are not the subject of Milton's Complaint at all.  (*See* Steblea Decl., ¶ 4.)  It is thus clear that the putative class's maximum possible damages fall grossly short of the CAFA's statutory minimum required for diversity jurisdiction.

Further, even if Milton is able to seek statutory damages in those states that allow for them, she will still be unable to approach the jurisdictional threshold.  Of the six consumer protection laws Milton cites in her Complaint, only two provide for statutory damages, those of New Jersey and New York.  *Compare* Fla. Stat. Ann. § 501.211 (providing for recovery of actual damages); Ill. Comp. Stat. § 505/10a(a)(same); Mich Comp. Law. § 445.911(2)-(3) (providing for $250 statutory damages award in private actions but limiting recovery in class actions to actual damages); *Lozano v AT & T Wireless Services, Inc.*, 504 F.3d 718, 733 (9th Cir 2007) ("The only types of relief available under [Cal. Bus. & Prof. Code § 17200] are injunctive and restorative.") *with* N.J. Stat. Ann. § 56:8-19 (providing for treble damages in private action under act); N.Y. Gen. Bus. Law. § 349(h) (providing for award of actual damages or $50 statutory damages, whichever is greater, plus discretionary treble damages).

As set forth in the Steblea Declaration, Allstar had REDACTED in net sales in New Jersey pursuant to the Offer.  (Steblea Decl., ¶ 5.)  Trebled, this figure increases to REDACTED Further, Allstar had REDACTED net sales transactions in New York pursuant to the Offer.  (*See id.*)  Even if the Court were to award treble statutory damages of $150 for each of these sales transactions, that would amount to only REDACTED When these two figures are added to the net sales pursuant to the

**CONFIDENTIAL INFORMATION REDACTED**
**UNREDACTED COPY FILED UNDER SEAL PURSUANT TO COURT ORDER DATED 10/29/2010**

Offer in the other jurisdictions, the total is still only REDACTED, far below the jurisdictional minimum.  Accordingly, the Court should dismiss Milton's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.

## III.     MILTON FAILS TO STATE A CLAIM FOR CONSUMER FRAUD

### A.     MILTON ALLEGES NO BASIS TO PURSUE A CLAIM ON HER OWN BEHALF UNDER THE LAWS OF CALIFORNIA, ILLINOIS, MICHIGAN OR NEW JERSEY

As noted above, Milton's Complaint alleges claims under the consumer protection statutes of six states: California, Illinois, Michigan, New Jersey, New York and Florida.  But it is axiomatic that Milton herself cannot sue Allstar under the laws of states bearing no connection whatsoever to her purchase.  "[A] plaintiff may pursue a private cause of action under the [Illinois] Consumer Fraud Act [only] if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 187, 835 N.E.2d 801, 853-54 (2005).  Similarly, California's Unfair Competition Law may not be applied to claims by out-of-state parties when they are harmed by wrongful conduct occurring entirely outside of California.  *See Norwest Mtge., Inc. v Superior Ct.*, 72 Cal. App. 4th 214, 224-27 (Ct. App. 1999).  Likewise, Michigan's Consumer Protection Act does not allow consumers who neither reside nor are injured in Michigan to bring a class action under that statute. *In re OnStar Contr. Litig.*, 600 F. Supp. 2d 861, 866 (E.D. Mich. 2009). And it is hard to conceive of circumstances warranting the application of New Jersey consumer protection law when neither the plaintiff nor the defendant is located in New Jersey. *Cf. Laufer v U.S. Life Ins. Co. in City of New York*, BER-L-9082-04, 2005 WL 1869211, at *9 (N.J. Super. Ct. Law Div. Aug. 8, 2005), *aff'd*, 385 N.J. Super. 172, 896 A.2d 1101 (N.J. Super. Ct. App. Div. 2006) (holding – in case involving defendant with office in New Jersey – that "New Jersey has a

CONFIDENTIAL INFORMATION REDACTED
UNREDACTED COPY FILED UNDER SEAL PURSUANT TO COURT ORDER DATED 10/29/2010

significantly diminished interest in a long-arm protective scheme for out-of-state victims of consumer fraud");

Milton alleges that she is a resident of the state of Florida, and that Allstar resides in New York. (Compl. ¶¶ 1, 2.) Aside from those allegations, the Complaint contains no allegations linking Milton's purchase to any other jurisdiction, or asserting any connection between Milton's claim and any other state. Accordingly, to the extent Milton had a claim, she could proceed only under either New York's Consumer Protection Act, N.Y. Gen. Bus. Law § 349, or Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201 *et seq.* ("DUTPA").

**B.   MILTON HAS NO VIABLE CLAIM UNDER NEW YORK'S CONSUMER PROTECTION ACT**

### 1.   *Milton May Not Bring a Claim under New York's Consumer Protection Act*

The New York Court of Appeals has considered the territorial reach of N.Y. Gen. Bus. Law § 349, and has concluded that the Act reaches only those claims in which the consumer has been deceived within New York. In *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 321-22 (2002), the court examined claims made by out-of-state plaintiffs who had purchased "vanishing premium" insurance policies from defendant MONY. MONY had extensive ties to the State of New York, and conducted business in New York, and the plaintiffs claimed that the allegedly deceptive "vanishing premium" concept originated at the company's offices in New York. On that basis, the plaintiffs asserted that the actionable deceptive conduct occurred in New York.

The Court of Appeals disagreed, noting that "[t]he origin of any advertising or promotional conduct is irrelevant if the deception itself--that is, the advertisement or promotional package--did not result in a transaction in which the consumer was harmed." (*Id.* at 326.) The

court then noted that the *Goshen* plaintiffs were located outside of New York when they received the allegedly deceptive information, and when they purchased the policies and paid their premiums.  Accordingly, the court found that the alleged deception took place outside of New York, and dismissed the claims by those out-of-state plaintiffs.  *Id.* at 326.

Under the principles set forth by the court in Goshen, Milton cannot pursue a claim under § 349.  Milton alleges that Strap Perfect clips are sold only via the Website, that she is a Florida resident, and that she purchased a set of Strap Perfect clips.  (Compl. ¶¶ 1, 13, 17, 30.)  No allegation in the complaint suggests that Milton made her purchase outside of her home state. Thus, the only fair reading of Milton's Complaint is that she viewed the Website and made her purchase while in Florida.  Under those circumstances, § 349 does not reach her claim.

### 2.    *Even if Milton Could Proceed Under New York's Consumer Protection Act, Allstar's Offer Does Not Violate the Act*

Assuming *arguendo* the Milton could proceed under § 349 – which, as demonstrated above, she cannot – her claim would still fail.  Courts in New York have squarely addressed the issue of whether fully disclosed fees, such as the P&H fee herein, can render an offer deceptive. Those courts have explicitly held that the charging of fees like Allstar's disclosed P&H fee – even in connection with a free product – is not a deceptive practice.

In *Zuckerman v. BMG Direct Marketing, Inc.*, 290 A.D.2d 330 (1st Dep't 2002), the Appellate Division considered allegations that a mail order music club operator billed its customers for shipping and handling fees that exceeded actual shipping and handling costs.  The court held that such allegations were insufficient to state a cause of action under § 349, because the music club's promotional materials disclosed the exact amount to be charged for shipping and handling of each recording.  Specifically, the court stated:

13

> As a matter of law, a disclosure that a specified amount will be charged for shipping and handling cannot cause a reasonable consumer to believe that such amount necessarily is equal to or less than the seller's actual shipping and handling costs… [I]n a case such as this, where there is no coercion involved, the focus is whether the amount of the charge is disclosed. If so, the question of whether the amount charged is unreasonable or excessive is not an issue for the courts to address.

*Zuckerman*, 290 A.D.2d at 330-31.

The Appellate Division affirmed its *Zuckerman* holding in *Taylor v. BMG Direct Marketing, Inc.*, 299 A.D.2d 181 (1st Dep't 2002), holding that shipping and handling fees did not render the defendant's offer of "free' CDs deceptive.  The Court found that defendant had not violated FTC rules and regulations because it disclosed its shipping and handling fees "clearly and conspicuously, at the outset of the offer."  *Id.*; s*ee also Sands v Ticketmaster-New York, Inc.*, 207 A.D.2d 687 (1st Dep't 1994) (holding that § 349 claim based on "excessive" fees for event tickets should have been dismissed because it was undisputed that amount of fees was clearly disclosed to consumers); *Lewis v. Hertz*, 181 A.D.2d 493, 494 (1st Dep't 1992) (holding claim that auto rental company's optional fees for refueling, collision damage waiver, and personal accident insurance, and fees for hourly late charges, did not violate Act, because defendant had disclosed the fees to be charged prior to the transaction, regardless of whether those fees corresponded to actual costs of gasoline or insurance).

As mentioned above, Allstar openly and fully discloses the precise amount of P&H fees to be charged before customers are obligated to accept any offer or make any payment to Allstar. Indeed, Allstar prominently discloses the additional $7.95 P&H fee adjacent to every instance where the price of the clips or the terms of the Offer are listed on the Website.  (*See* Steblea Decl., Ex. 1, *passim*.)  As the New York Appellate Division held in *Zuckerman* and *Taylor*,

given these clear disclosures and options before completing any transaction, as a matter of law no reasonable consumer is likely to be misled or injured.

### C.   ALLSTAR'S MARKETING MATERIALS DO NOT VIOLATE THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

Florida's DUTPA makes unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204.   DUTPA specifically provides that, in construing its provisions, due consideration and great weight shall be given to the interpretation of the Federal Trade Commission ("FTC") and the federal courts relating to Section 5(a)(1) of the FTC Act.   *Id.* Florida courts have adopted the FTC standard for deceptive advertising, and find deception if "there is a representation, omission or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment."   *Millennium Commn's & Fulfillment, Inc. v. Office of the Attorney General*, 761 So. 2d 1256, 1263 (Fla. Dist. Ct. App. 2000) *citing Southwest Sunsites, Inc. v. Federal Trade Commission*, 785 F.2d 1431, 1434-35 (9th Cir. 1986).

Federal courts interpreting Florida's DUTPA have found that charging a separately itemized and disclosed fee is not deceptive, unless the company charges what appears to be a pass-through fee for third party costs, and then retains a portion for itself.   *Berry v. Budget Rent A Car Systems, Inc.*, 497 F. Supp. 2d 1361, 1367 (S.D. Fla. 2007).   In *Berry*, the plaintiffs alleged that Budget's assessment of a "cost recovery fee" in addition to its daily rental rates violated DUTPA.   Budget clearly disclosed the fee before the transaction took place, and Budget did not portray the fee as a pass-through charge.   In light of those circumstances, the court held that the plaintiff had stated no viable DUTPA claim.   *Id.*   Indeed, the court found that the term "cost recovery fee" itself implied that the company would keep the money collected.   *Id.*   The

court likewise rejected the plaintiffs' claim that the fee was deceptive because it exceeded the actual costs it was allegedly designed to recoup, namely, the costs of licensing and registering its fleet of cars.  *Id.*

No Florida case applying DUTPA or federal case interpreting the FTC Act has directly addressed the issue of whether charging clearly disclosed P&H (or, for that matter, shipping and handling) fees in the context of a "Buy 1 Get 1 Free" offer constitutes a deceptive practice.  As discussed above, however, and similar to DUTPA, New York's Consumer Protection Act provides that deceptive acts or practices in the conduct of any business, trade or commerce are unlawful, and explicitly references the FTC and the FTC Act in determining whether conduct runs afoul of the statute.  *See* N.Y. Gen. Bus. Law § 349(d).  As also discussed above, and critically, courts in New York have squarely addressed this issue, holding that <u>it is not a deceptive practice</u>.  *See Zuckerman*, 290 A.D.2d at 330; *Taylor*, 299 A.D.2d at 181.

The facts in this case are indistinguishable from *Zuckerman* and *Taylor*.  As stated in *Zuckerman*, in determining whether the practice is deceptive, "the focus is whether the amount of the charge is disclosed," and there can be no doubt that the disclosure here was made prominently and repeatedly throughout of the Offer.  Similarly, as in *Berry*, there is no allegation in this case, nor could there be, that the fully disclosed "processing and handling" fees charged by Allstar were portrayed as pass-through charges that Allstar improperly retained; rather, the fees were portrayed as Allstar's own "processing and handling" charges. As a matter of law, no customer acting reasonably under the circumstances could have been misled.  Therefore, under Florida law or New York law, the Court should dismiss Count I of the Complaint.

16

## IV.    MILTON FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT

Finally, Milton has failed to state a claim for breach of contract, because she has not alleged Allstar's breach of any contractual term.  Milton alleges that she contracted to purchase Strap Perfect clips from Allstar pursuant to the Offer.  (Compl. ¶ 58.)  The terms of the Offer explicitly state that:

- The customer will pay $19.99 for one set of Strap Perfect clips;

- The customer will pay a $7.95 P&H charge for those clips;

- The customer will receive an additional, second set of clips for free;

- The customer will pay a $7.95 P&H charge for the second set of clips; and

- Upon the customer's payment of the foregoing charges, Allstar will ship two sets of clips to the customer.

The foregoing terms are the only terms offered by Allstar to the customer.  (*See* Steblea Decl., Ex. 1.)  Moreover, according to Milton's Complaint, this is exactly how her transaction with Allstar transpired.  (*See* Compl. ¶¶ 30-33.)

Milton appears to be alleging that Allstar somehow breached the terms of the Offer by failing to ship her a second *package*, which she would presumably open, remove therefrom her Strap Perfect clips, and then discard.  (Compl. ¶¶ 58-59.)  Facially, this is a bizarre allegation, and it screams of an attempt to trump up a weak claim by shoehorning it into an ill-fitting second cause of action.  Regardless, nowhere does Milton allege – and nowhere does the Website reflect – any offer by Allstar to ship a second *package*.  Rather, Allstar offers to send a second *set of clips*, which Milton concedes Allstar did.  (*Id.* ¶ 19.)  Moreover, nowhere on the Website does Allstar represent that the P&H charge corresponds to shipping costs.  Contrary to the language used throughout Milton's Complaint, Allstar clearly describes the P&H charge as one for "processing and handling."  (*See* Steblea Decl., Ex. 1, at 5-10; Ex. 2.)  Accordingly, Milton fails

to allege Allstar's breach of any contract, and the Court should dismiss Count II of her Complaint.

## CONCLUSION

For all of the foregoing reasons, the Court should grant defendant Allstar's motion, and dismiss plaintiff Audrey C. Milton's Complaint in its entirety pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and grant such other relief as the Court deems just and proper.

Dated: November 8, 2010
       New York, New York

DAVIS & GILBERT LLP

_____
Neal H. Klausner (nklausner@dglaw.com)
Jennifer Tafet Klausner (jklausner@dglaw.com)
David S. Greenberg (dgreenberg@dglaw.com)
Shirin Keen (skeen@dglaw.com)
1740 Broadway
New York, NY  10019
(212) 468-4800
*Attorneys for Defendant*
*Allstar Products Group, LLC*